United States District Court
Southern District of Texas
**ENTERED**
June 29, 2021
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| WEST WILMINGTON OIL FIELD CLAIMANTS, | § § § | |
| Creditor-Appellants, | § § | |
| VS. | § § | CIVIL ACTION NO. H-20-3014 |
| CJ HOLDING CO., *et al.*, | § § | |
| Debtor-Appellees. | § | |

**MEMORANDUM AND OPINION**

The bankruptcy court denied the creditor-appellants' motion to file late proofs of claim. The appellants were plaintiffs in a wage-related putative class action against C&J Well Services, Inc. in the Central District of California. C&J Well Services filed for bankruptcy. The automatic stay applied to the California wage litigation. Soon after, Nabors Corporate Services agreed to indemnify C&J Well Services for the California wage litigation. The indemnification agreement spurred the creditor-appellants and debtors to seek an agreed order lifting the bankruptcy stay so that the creditor-appellants could pursue their claims in the California district court. The bankruptcy court granted the order and factored the indemnification agreement and the California wage litigation into the debtors' reorganization plan.

Shortly before the agreed order was entered, the named plaintiffs in the California wage litigation, Brandyn Ridgeway and Tim Smith, timely filed two class proofs of claim. Twenty-seven of the creditor-appellants timely filed individual proofs of claim. Sixty-seven other creditor-appellants did not file individual proofs of claim. Nabors reserved its right to object to the class proofs of claim.

For the next two years, the parties litigated, appealed, mediated, and otherwise attempted to settle the California wage litigation.  Those two years produced a patchwork of orders and decisions from the California district court, the Ninth Circuit Court of Appeals, and the Texas bankruptcy court.  The orders and decisions did not address or clarify whether the creditor-appellants needed to file individual proofs of claim or whether they could rely on the previously filed class proofs of claim.  The position Nabors took by negotiating for a global resolution of the California wage litigation, while reserving its objection to claims by any creditor-appellant who did not file an individual proof of claim, reflects the uncertain status of the need for individual as opposed to classwide proofs of claim.

When it became clear that the parties could not settle the California wage litigation, Nabors objected in the Texas bankruptcy court to the claims from the creditor-appellants who had not previously filed individual proofs.  The creditor-appellants moved to file late proofs of claim.  The bankruptcy court granted Nabors' objection and denied the creditor-appellants' motion.  The creditor-appellants timely appealed.  This court has jurisdiction under 28 U.S.C. § 158(a).

Based on the record, the briefing, and the arguments of counsel presented at an oral hearing, the bankruptcy court's order denying the creditor-appellants' motion to file late proofs of claim is reversed.  This case is remanded to the bankruptcy court for proceedings consistent with this ruling.  The reasons for this ruling are set out below.

## I.    Background

### A.    The Wage Litigation

Brandyn Ridgeway and Tim Smith, former employees of Nabors Completion and Production Services Co., worked at the West Wilmington oilfield.  (ROA 8283–84).  In April 2015, Ridgeway and Smith filed a putative class action against Nabors Completion, asserting

claims for failure to pay prevailing wages under California Labor Code §§ 1194, 1771, 1774, *et seq.*; waiting-time penalties under California Labor Code § 203; unfair competition under the California Business and Professions Code § 17200; inaccurate wage statements under California Labor Code § 226(a); and penalties under the California Private Attorney General Act, Cal. Lab. Code § 2699, *et seq.* (ROA 8141, 8283–311). Nabors Completion removed the case to a California federal district court and moved to compel arbitration. (ROA 8141, 7747–49, 7750–72). The arbitration agreement contained a class-action waiver, which Nabors sought to enforce. The district court denied the motion to compel after finding the arbitration agreement unenforceable. (ROA 7593, 7611). In October 2015, Nabors Completion appealed to the Ninth Circuit Court of Appeals. (ROA 8141). The California district court stayed proceedings while the appeal was pending. (*See Ridgeway & Smith, et al. v. Nabors Completion & Prod. Servs. Co., et al.*, No. 2:15-cv-03436, Docket Entry No. 77 (C.D. Cal. Jan. 27, 2016)).

**B.      The Merger, Bankruptcy, and Indemnity Agreement**

Shortly before the California wage litigation began, in March 2015, Nabors Completion merged with C&J Energy, Ltd., to become C&J Well Services, Inc. (ROA 8283–84, 7459–60). In July 2016, C&J Well Services filed for bankruptcy in the Southern District of Texas.[1] (ROA 454–64). C&J Well Services filed a notice of bankruptcy in the California district court and Ninth Circuit, resulting in a stay of the wage litigation, which was then on appeal in the Ninth Circuit. (ROA 8053–108).

---

[1] The debtors that filed for bankruptcy are CJ Holding Co., Blue Ribbon Technology Inc., C&J Corporate Services (Bermuda) Ltd., C&J Energy Production Services-Canada Ltd., C&J Energy Services, Inc., C&J Energy Services Ltd., C&J Spec-Rent Services, Inc., C&J VLC, LLC, C&J Well Services Inc., ESP Completion Technologies LLC, KVS Transportation, Inc., Mobile Data Technologies Ltd., Tellus Oilfield Inc., Tiger Cased Hole Services Inc., and Total E&S, Inc. (ROA 3823).

In September 2016, the Texas bankruptcy court entered a bar-date order, which established November 8, 2016, as the deadline for creditors to file proofs of claim.  (ROA 695–725, 731–36).  C&J Well Services filed a bar-date notice informing creditors of the deadline to file proofs of claim.  (ROA 731–36).  The bar-date notice made clear that a creditor who failed to file a proof of claim would be "forever barred, estopped, and enjoined from asserting" claims against C&J Well Services.  (ROA 735).  C&J Well Services served the bar-date notice on the named plaintiffs.  Counsel for C&J Well Services stated at oral argument that it also served the bar-date notice on the absent putative class members in the California wage litigation.  (ROA 726–3718, 4465–7455).

The day before the bar date, the named plaintiffs in the California wage litigation, Ridgeway and Smith, each filed a proof of claim as the representatives of the putative class members.  (ROA 8142).  Ridgeway and Smith each asserted the total amount of class damages, $14,029,348, in their proofs of claim.  (ROA 8357).  Twenty-seven putative class members also filed individual proofs of claim.  (ROA 8142, 8357–58).

In December 2016, Nabors Corporate Services entered into a settlement agreement with C&J Well Services.  (ROA 8439–43, 7460).  Nabors previously had contracted to indemnify C&J Well Services.  (ROA 8439–43).  Nabors agreed to continue indemnifying C&J Well Services for certain unsecured claims, including claims from the California wage litigation.  (ROA 7514–18, 8439–43).  The settlement agreement gave Nabors "standing to object [in the bankruptcy court] to any proof of claim for which it has indemnified" C&J Well Services.  (ROA 7460).  The bankruptcy court incorporated the settlement agreement into the debtor's reorganization plan. (ROA 4271–72).

Shortly thereafter, the bankruptcy court confirmed the debtors' second joint-reorganization plan.  (ROA 4319–75, 4245–385).  The plan provided that:

> Except as provided herein or otherwise agreed, any and all Proofs of Claim Filed after the Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order.

(ROA 4362).   The plan enjoined parties from collecting on prebankruptcy claims against the debtors:

> Except as otherwise expressly provided in the Plan . . . , all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from . . . commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests;

(ROA 4365).

### C.    Relief from the Automatic Stay and the Reorganization Plan Injunction

Before the bar date, counsel for the debtors informed counsel for the creditor-appellants that Nabors would indemnify C&J Well Services for the California wage-litigation claims, and that the indemnification would provide the basis for relief from the automatic bankruptcy stay. (ROA 8262).   The parties filed an agreed motion for relief from the bankruptcy stay.   (ROA 8263, 8342).   In February 2017, the bankruptcy court entered the agreed order, giving Ridgeway and Smith relief from the bankruptcy stay and from the reorganization-plan injunction.   (ROA 4459–64).   The order permitted Ridgeway and Smith to pursue the California wage litigation:

> [N]otwithstanding the automatic stay and the injunctive provisions contained in the Debtors' chapter 11 plan [Docket No. 1045] (the "Plan") and Section 524(a) of the Bankruptcy Code, Brandyn Ridgeway and Tim Smith ("Movants"), on behalf of themselves and all non-exempt workers currently or formerly employed by Nabors Completion & Production Services Co. n/k/a C&J Well Services, Inc. ("Well Services") within the State of California performing work in the West Wilmington Oil Fields in execution of a contract or contracts between the City of Long Beach and Tidelands Oil Production Co. (all such non-exempt workers, including Movants, the "Putative Class Members"), shall be permitted to proceed to trial and judgment on or settlement of the litigation styled *Brandyn Ridgeway and Tim Smith, et al. v. Nabors Completion & Production Services Co., et al.*, currently pending in

the Central District Court of California under Case No. 2:15-cv-03436-DDP-VBKx (the "Litigation").

(ROA 4460).  The order also stated that, if a judgment or settlement amount "exceed[ed] the amount of funds available" from insurance policies or third parties, Ridgeway, Smith, and the putative class members would have "no right to collect" from the debtors "absent further order" of the bankruptcy court.  (ROA 4461).  The parties reserved their rights to challenge "the validity of the purported 'class' proofs of claim" filed by Ridgeway and Smith.  (ROA 4461).

### D.     The Ninth Circuit Reversal

A year later, in February 2018, the Ninth Circuit reversed and remanded the California federal district court's order denying the C&J Well Services motion to compel arbitration.  (ROA 7681–85).  The Ninth Circuit held that Ridgeway's and Smith's arbitration agreements with C&J Well Services, which included class-arbitration waivers, were enforceable.  (ROA 7683).  The Ninth Circuit remanded to the district court to "consider the limited issue of whether to certify Plaintiffs' Private Attorneys General Act claims."  (ROA 7683).  On remand, the California federal district court dismissed Ridgeway's and Smith's individual and class claims but retained jurisdiction over the Private Attorneys General Act claims.  *Ridgeway v. Nabors Completion & Prod. Servs. Co.*, No. 15-CV-3436, 2018 WL 3569341 (C.D. Cal. July 23, 2018).

After the Ninth Circuit's decision, in March 2018, 96 putative class members in the California wage litigation initiated individual arbitration proceedings.  (ROA 8142–43, 8194, 8444–92).  Ridgeway, Smith, and 27 putative class members had timely filed individual proofs of claim in the bankruptcy court.  (ROA 8248–50).  Sixty-seven other putative class members had not filed proofs of claim.  (ROA 7468–77, 8142–43, 8184, 8248–50).  None of the putative class members sought leave from the bankruptcy court before initiating individual arbitrations.

In May 2018, Nabors filed a status report with the California federal court stating its intention to object to and seek to enjoin the arbitrations started by putative class members who had not timely filed individual proofs of claim with the bankruptcy court.  (ROA 8271).  Nabors and the creditor-appellants also discussed a global mediation to resolve the outstanding wage-related claims.  (ROA 8271).

In October 2018, Nabors objected to the late-filed individual proofs of claim.  (ROA 7456–81).  Nabors also argued that the California wage-litigation creditors who were members of the putative class could not rely on Ridgeway's and Smith's class proofs of claim because the Ninth Circuit's opinion had barred class certification.  (ROA 7464).  Nabors asked the bankruptcy court to permit only "Ridgeway, Smith, and the Individual Claimants [who had filed proofs of claim] to proceed to arbitration, and judgment on, or settlement of, the Pre-Petition Litigation."  (ROA 7465).  The California wage-litigation creditors argued that the bankruptcy court's order lifting the stay gave all of them the right to pursue individual arbitrations.  (ROA 7453, 7692).

### E.       The Bankruptcy Court's Orders

The bankruptcy court sustained the objection Nabors asserted to the proofs of claim, holding that a class-wide proof of claim was not allowed, and that only the wage-litigation plaintiffs who had filed timely individual proofs of claim could arbitrate their individual claims.  (ROA 8199–8202, 8549–52).  The bankruptcy court suggested that it would consider a motion for leave to file late individual proofs of claim for the 67 wage-litigation putative class members who had not already filed them.  (ROA 8201–02).  These individuals filed a motion requesting leave to file late proofs of claim based on excusable neglect.  (ROA.8220–50).  The bankruptcy court denied the motion, holding that they had not shown excusable neglect.  (ROA 8695–98).  The bankruptcy court found that the record was "so poor as to essentially be non-existen[t]"; there was

potential prejudice to the debtor, because the Nabors "indemnification might not be honored" and "other folks" might seek to file late proofs of claim; the delay was "within the reasonable control" of the creditors; and the reason for the delay was "attorney incompetence."  (ROA 8696–97).

The California wage-litigation class-member creditors appealed.  (ROA 8708–14).  The parties certified a nearly 10,000-page record, both parties filed briefs, and this court held a hearing in which the parties presented their arguments.  (Docket Entry No. 4).

## II.    The Legal Standards

### A.    The Standard of Review

"When reviewing a bankruptcy court's decision . . . a district court functions as a[n] appellate court and applies the standard of review generally applied in federal court appeals." *In re Renaissance Hosp. Grand Prairie Inc.*, 713 F.3d 285, 293 (5th Cir. 2013) (citation and quotation marks omitted).  The court reviews the bankruptcy court's factual findings for clear error but reviews de novo its conclusions of law and resolution of mixed questions of law and fact.  *In re San Patricio Cty. Cmty. Action Agency*, 575 F.3d 553, 557 (5th Cir. 2009).  The bankruptcy court's expertise and knowledge of the case deserves this court's respect and, when appropriate, deference.

### B.    Excusable Neglect

To qualify as a Chapter 11 bankruptcy creditor, a claimant must file a proof of claim by the bar date.  Fed. R. Bankr. P. 3003(c)(2); *In re ValuePart*, 802 F. App'x 143, 146 (5th Cir. 2020).  A bankruptcy court may grant leave to file a late proof of claim if "the failure to act was the result of excusable neglect."  Fed. R. Bankr. P. 9006(b)(1).

Excusable neglect covers "situations in which the failure to comply with a filing deadline is attributable to negligence."  *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 394 (1993).  Inadvertence, ignorance of the rules, and mistakes about the rules "do not usually

8

constitute 'excusable' neglect," but the concept is "elastic" and "is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Id.* at 392; *see also Halicki v. La. Casino Cruises, Inc.*, 151 F.3d 465, 469 (5th Cir. 1998) ("[A] misconstruction of the rules—especially when their language is plain—will rarely satisfy the 'excusable neglect' standard."); *see also McCurry v. Adventist Health Sys./Sunbelt*, 298 F.3d 586, 592 (6th Cir. 2002) ("[N]either strategic miscalculation nor counsel's misinterpretation of the law warrants relief from a judgment.").

Courts consider four factors when determining whether there is excusable neglect: (1) "whether the movant acted in good faith"; (2) "the danger of prejudice" to the debtor; (3) "the length of the delay and its potential impact on judicial proceedings"; and (4) "the reason for the delay, including whether it was within the reasonable control of the movant." *In re Prism Graphics, Inc.*, 666 F. App'x 355, 356–57 (5th Cir. 2016) (quoting *Pioneer*, 507 U.S. at 395). No one factor controls. *See In re 50-Off Stores, Inc.*, 220 B.R. 897, 901 (Bankr. W.D. Tex. 1998). The excusable-neglect "determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's" error. *Prism*, 666 F. App'x at 357 (quoting *Pioneer*, 507 U.S. at 395).

## III. Analysis

### A. Good Faith

The record does not show that the creditor-appellants acted in bad faith. *See In re Eagle Bus Mfg., Inc.*, 62 F.3d 730, 737 (5th Cir. 1995) ("[The debtor] does not argue that the Claimants acted in bad faith. Indeed, the record is devoid of anything to suggest that the parties acted in any way other than in good faith.").

### B.        Danger of Prejudice to the Debtor

The second factor favors the creditor-appellants.  "Under *Pioneer*, the central inquiry is whether the *debtor* will be prejudiced," not indemnifying parties.  *Id.* at 737–38 (emphasis in original).  Courts may also account for potential prejudice to "the other unsecured creditors and . . . future judicial proceedings."  *In re ValuePart, Inc.*, 802 F. App'x at 148.

Courts examine several factors when determining whether late-filed proofs of claim will prejudice the debtor, including the size of the claims, whether the reorganization plan was confirmed with an expectation of the claims, and whether the claims will disrupt the "economic model" on which the reorganization plan was built.  *In re Enron Creditors Recovery Corp.*, 370 B.R. 90, 101 (Bankr. S.D.N.Y. 2007) (quoting *In re Keene Corp.*, 188 B.R. 903, 910 (Bankr. S.D.N.Y. 1995)).  Courts are less likely to find that a debtor is prejudiced by late-filed claims when the debtor "expected" the claims before the bankruptcy court approved its reorganization plan.  *In re Eagle Bus Mfg., Inc.*, 62 F.3d at 737–38 ("We note that [the debtor's] reorganization plan was negotiated and approved after [the debtor] had notice of these claims.  This is not a situation where the debtor's plan was formulated, negotiated, and confirmed before notice was given of a substantial late claim.").

The record does not show that allowing the late-filed claims is likely to prejudice the bankruptcy debtors or creditors.  Nabors agreed to indemnify C&J Well Services for certain unsecured claims, including the prebankruptcy California wage-litigation claims.  The bankruptcy court confirmed the reorganization plan based on the indemnification agreement.  (ROA 4271–72, 4275, 4377–80).  The order granting the creditor-appellants relief from the bankruptcy stay also made clear that recovery would come from a third party such as Nabors, or insurers, not the debtors or other creditors.  (ROA 4461).  The bankruptcy court suggested that the Nabors indemnification

10

agreement "might not be honored," but the record does not show that Nabors has refused or is likely to refuse to indemnify the debtors.  (ROA 8683).  And if Nabors does refuse to indemnify the debtors, the record does not show that the refusal would alter the current distribution or require creditors to return "amounts already paid out under the confirmed [p]lan."  *In re O'Brien Env't Energy, Inc.*, 188 F.3d 116, 128 (3d Cir. 1999).

The reorganization plan also contains a disputed-claims reserve fund in case an indemnitor refuses to reimburse the debtors.  (ROA 7514).  This record evidence supports finding that allowing the late-filed claims will not harm the debtors or other creditors.

The record shows that the indemnitor, Nabors, as well as the debtors expected the creditor-appellants' claims.  *See In re Northstar Offshore Grp., LLC*, No. 16-34028, 2018 WL 4443201, at *4 n.3 (Bankr. S.D. Tex. Sept. 14, 2018) ("[The debtor's] plan specifically anticipated the possibility that a post-confirmation proof of claim could be filed."); *In re O'Brien Env't Energy, Inc.*, 188 F.3d at 128 ("This is not a case where the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated.").  The California wage litigation preceded the bankruptcy by over a year.  The debtors listed the lawsuit claims in their statements of financial affairs.  (ROA 657); *see In re Wallace, Rush, Schmidt, Inc.*, No. 17-10698, 2018 WL 3954184, at *4 (Bankr. E.D. La. Aug. 14, 2018) ("The tort suits were filed well before the bankruptcy case was commenced, and the debtor knew about the tort claimants, so these claims are not a surprise to the debtor.").

In *In re Eagle Bus*, 62 F.3d at 737–38, the Fifth Circuit found no prejudice to the debtor in allowing late-filed claims when they were expected.  Here, the late-filed claims were not only expected, they were factored into the confirmed reorganization plan, and a third party indemnitor is expected to cover them.  *See also In re Alexander's Inc.*, 176 B.R. 715, 722 (Bankr. S.D.N.Y.

11

1995) ("Debtors and other creditors will be prejudiced because the Proof of Claim was filed after the Debtors' Plan was formulated, negotiated and confirmed. . . . [A]llowance of [claimant's] claim would disrupt the 'economic model' on which all parties reached their agreements.").

Ridgeway and Smith each submitted timely class proofs of claim that listed the total amount of classwide damages as $14,029,348.  (ROA 8357).  The Nabors settlement agreement with the debtors covered the California wage-litigation claims.  (ROA 8439–8442).  The bankruptcy court incorporated the settlement agreement into the confirmation order.  (ROA 4271–72, 4275, 4377–80).

After confirmation, the bankruptcy court authorized the creditors and debtors to "estimate" that Nabors would indemnify the debtors for Ridgeway's and Smith's claims when determining the "Disputed Claims Reserve."  (ROA 7514).  The bankruptcy court valued Smith's and Ridgeway's claims as class representatives at $14,029,348.87 each, for a total of $28,058,697.74.[2] (ROA 7518).  The bankruptcy court instructed the debtors and creditors to set aside three percent of the "asserted face amounts" of each disputed claim, including Ridgeway's and Smith's class claims, in case Nabors failed to satisfy "its indemnification obligations."  (ROA 7514); *see also In re Spring Ford Indus., Inc.*, No. 02-15015, 2003 WL 21785960, at *5 (Bankr. E.D. Pa. July 25, 2003) ("[N]o prejudice has been found . . . where a reserve fund was set aside for disputed claims." (citing *In re Wheeling-Pittsburgh Steel Corp.*, 128 B.R. 391, 393 (Bankr. W.D. Pa. 1991))).

Nabors argues that allowing the creditor-appellants to file late individual proofs of claim will spur other creditors to file late proofs of claim.  The record does not show that allowing these late-filed claims will "precipitate the filing of many more" late-filed claims.  *In re 50-Off Stores,*

---

[2] At oral argument, counsel noted that the $28,058,697.74 figure is double the actual value of the creditor-appellants' claims.  Counsel for the creditor-appellants agreed that he could recover, at most, $14,029,348.87 for the creditor-appellants.

*Inc.*, 220 B.R. at 903 n.11. The record does not show others seeking relief from the bar date. *See In re O'Brien Env't Energy, Inc.*, 188 F.3d at 128 ("[T]o the extent [the debtor] argues that allowance of this claim would open the floodgates to other future claims against them, [the debtor] has not alleged that any other creditor promptly sought to be excused from the March 8 order so as to now be entitled to relief on the basis of excusable neglect."); *In re Beltrami Enters., Inc.*, 178 B.R. 389, 392 (Bankr. M.D. Pa. 1994) (finding no prejudice when "[n]o evidence was placed on the record to indicate that there were hordes of claimants ready to file claims should [the moving creditor] be allowed to file its claim late.").

Nor does the record reveal similar outstanding wage-related claims against the debtors. *See In re Enron Creditors Recovery Corp.*, 370 B.R. 90, 102 (Bankr. S.D.N.Y. 2007) ("[T]he cumulative effect of allowing [the creditor's] late-filed guaranty claim, when viewed at the time of the late-filed claim, may well have resulted in a flood of similar late-filed guaranty claims, which would have disrupted the economic model upon which the plan was formulated and negotiated.").

Nabors argues that the debtors would suffer because they would "incur costs for bankruptcy counsel related to the 67 new cases." (Docket Entry No. 10 at 22). In general, the "costs of litigation should not be considered prejudicial to the debtor as a result of allowing claims to be filed late." *In re Smith*, 200 B.R. 135, 138 (Bankr. S.D. Miss. 1996); *see also In re Wooten*, 620 B.R. 351, 356 (Bankr. D.N.M. 2020) ("[T]he accrual of attorney's costs and fees of objecting to and defending against [a creditor's] claim" is not prejudicial); *In re Bruno Mach. Corp.*, No. 05-20412, 2007 WL 2071747, at *3 (N.D.N.Y. July 12, 2007) ("[T]he fact that the debtor had to spend money litigating the late claim . . . [is not] a ground for prejudice under *Pioneer*."). The record does not show that the costs of the debtor's employee-representatives attending additional

arbitrations is unfairly prejudicial.  The record shows that the repetitive nature of the proceedings, the ready availability of remote video appearances, and the likelihood that the employer can record their testimony once for repeated use significantly reduce the likely costs and burden of the arbitrations.  *See In re O'Brien Env't Energy, Inc.*, 188 F.3d at 127 (the need to "expend significant employee time" does not generally qualify as prejudice (citing *In re Pettibone Corp.*, 162 B.R. 791 (Bankr. N.D. Ill. 1994))).

### C.     Length of Delay and Its Potential Impact

The third factor favors the creditor-appellants.  The Fifth Circuit has held that, in bankruptcy, "time is the essence of prejudice."  *In re ValuePart, Inc.*, 802 F. App'x at 148 (quoting *Pyramid Mobile Homes, Inc. v. Speake (In re Pyramid Mobile Homes, Inc.)*, 531 F.2d 743, 746 (5th Cir. 1976)).  The Fifth Circuit has found that a bankruptcy court did not abuse its discretion in denying leave to file a proof of claim that was 42 days late.  *See In re DLH Master Land Holding, LLC*, 464 F. App'x 316, 318−19 (5th Cir. 2012); *see also Kollinger v. Hoyle (In re Kollinger)*, 551 F. App'x 104, 108 (5th Cir. 2013) ("[N]o excuse justifies failing to file a brief for ten months."). However, the Fifth Circuit has held that the length of delay is less critical once the debtor's reorganization plan has been confirmed.  Late-filed claims may "be resolved" after confirmation "without necessitating the involvement of the bankruptcy court."  *In re Eagle Bus Mfg., Inc.*, 62 F.3d at 739.  Reorganization plans typically "contemplate[] that resolution of [late-filed] claims" will "continue even after the plan's confirmation," *id,* and the plan here so provided.  Courts also tend to find a delay excusable if the nonmovant incidentally caused the delay.  *Id.*

The delay between the bar date and the creditor-appellants' motion to file late proofs of claim is two years and nine months.  (ROA 731–36, 8220–50).  That is a long time.  The Ninth Circuit decision precluding class treatment was not issued until February 2018, 15 months after

14

the bar date.  The bankruptcy court did not rule that its February 2017 order precluded class-wide proofs of claim until July 2019, two years and eight months after the bar date.  That was when it first became clear that the creditor-appellants needed to file individual proofs of claim.  They sought leave to file late claims one month later.  *See In re Eagle Bus. Mfg., Inc.*, 62 F.3d at 740 (finding excusable neglect when a delay was six to eight months); *Chemetron Corp. v. Jones*, 72 F.3d 341, 350 (3d Cir. 1995) (remanding to determine excusable neglect when the motion to file late proof of claim came two years after the plan was confirmed).

Ridgeway and Smith each filed a class proof of claim before the bar date, and 27 putative class members filed individual proofs of claim before the bar date.  (ROA 8142, 8357–58).  In February 2017, the bankruptcy court gave the creditor-appellants relief from the bankruptcy stay to pursue the class claims in California federal district court.  (ROA 4459–64).  In February 2018, the Ninth Circuit's decision told Ridgeway and Smith for the first time that they could not pursue the claims as a class action.  (ROA 7681–85).  A month later, in March 2018, the creditor-appellants initiated 96 individual arbitrations.  (ROA 8142–43, 8194, 8444–92).  The bankruptcy court's order lifting the stay permitted Ridgeway and Smith to pursue individual and class claims through "trial and judgment" or "settlement."  (ROA 4460).  The order did not preclude the creditor-appellants from pursuing individual arbitration claims.  (ROA 7465).  Nor did it limit individual arbitration claims to the creditor-appellants who had previously filed individual proofs of claim.

In May 2018, Nabors objected in the bankruptcy court to claims from the 67 creditor-appellants who had not filed individual proofs of claim.  (ROA 8271).  Soon after, the parties tried to settle the outstanding claims through mediation.  (ROA 8271–72).  The parties conducted informal discovery and claims analysis, haggled over mediators, mediated in December 2018, but

failed to resolve the claims.  (ROA 8274).  The parties continued to negotiate until February 2019, when the creditor-appellants filed a motion asking the bankruptcy court to interpret the order lifting the bankruptcy stay and injunction.  (ROA 7539–48).  In July 2019, the bankruptcy court held that the agreed order permitted only the creditor-appellants who had filed individual proofs of claim to pursue their arbitration claims.  (ROA 8550).  A month later, the creditor-appellants moved for leave to file late proofs of claim.  (ROA 8220–50); *see In re Wallace, Rush, Schmidt, Inc.*, No. 17-10698, 2018 WL 3954184, at *4 (Bankr. E.D. La. Aug. 14, 2018) ("[I]t appears from the record that once [the creditor-appellants] understood that they needed to file proofs of claim, they did so fairly quickly.").

Delays from allowing the late-filed claims to proceed will not significantly affect the bankruptcy proceedings.  The bankruptcy court built in time for Ridgeway and Smith to litigate their individual and class claims in the California federal court.  (ROA 4459–64).  Arbitrations have already begun for some of the 29 creditor-appellants who timely filed proofs of claim.  At oral argument, counsel for the creditor-appellants informed the court that these arbitrations are moving quickly:

- the first 27 arbitrations are scheduled, and 8 are finished;

- the final arbitration hearings take roughly one day to complete;

- liability is often resolved in favor of the creditor-appellant in a dispositive motion, leaving only damages for the final arbitration hearing;

- corporate representatives appear by video;

- prerecorded testimony may suffice; and

- the same 9 arbitrators will hear all 96 arbitrations.

The arbitrations will likely move quicker as the arbitrators and parties proceed. Allowing the late-filed claims will not extend the delay far beyond the time contemplated in the order or create unfair prejudice.

### D. Reasons for Delay

The fourth factor also favors the late-filed proofs of claim. Courts are less likely to find excusable neglect when the reason for delay was within the movant's "reasonable control," *In re ValuePart, Inc.*, 802 F. App'x at 148, although excusable neglect is not "limited to errors caused by circumstances beyond the late filing party's control," *United States v. Clark*, 51 F.3d 42, 43 (5th Cir. 1995). Courts examine the nonmovant's role in causing the delay, *In re O'Brien Env't Energy*, 188 F.3d at 128, and whether "confusion or ambiguity existed regarding the need to file," *In re Eagle Bus Mfg., Inc.*, 62 F.3d at 740.

Counsel for the creditor-appellants explained that he filed 29 individual proofs of claim, instead of 96, because, unlike counsel for C&J Well Services, he did not have contact information for each absent putative class member. The California district court had stayed class discovery while its arbitration ruling was on appeal to the Ninth Circuit. (*See Ridgeway & Smith, et al. v. Nabors Completion & Prod. Servs. Co., et al.*, No. 2:15-cv-03436, Docket Entry No. 77 (C.D. Cal. Jan. 27, 2016)).

The record shows reason for confusion about whether the creditor-appellants needed to file individual proofs of claim before the bar date, rather than relying on class-wide proofs of claim. Ridgeway and Smith each filed class proofs of claim after the California federal district court held that the contested arbitration agreements were unenforceable. (ROA 8142, 8357). Class treatment was partially precluded a year later, after the Ninth Circuit reversed the district court's decision and held that the arbitration agreements, with their class-action waivers, were enforceable. But

the Ninth Circuit's decision did not eliminate all uncertainty over whether aggregate litigation was appropriate.  Ridgeway and Smith had filed claims under California's Private Attorneys General Act, which allows private citizens to represent a group of people.  Lawsuits under the Act are "representative suits," but they are not treated as class actions.  *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1123 (9th Cir. 2014) ("[A] PAGA suit is fundamentally different than a class action.").  The Ninth Circuit remanded to the district court to determine whether "to certify Plaintiffs' PAGA claims."  (ROA 7685).

The bankruptcy court's agreed order lifting the stay appears to have added to the uncertainty.  The order gave the creditor-appellants the right to "proceed to trial and judgment on or settlement of the" California wage litigation.  (ROA 4460).  The order was entered before the Ninth Circuit's decision and contemplated class litigation in the California federal district court. (ROA 4460 (referring to the creditor-appellants as "Class Members" and explaining that "[t]he term Class Members shall not include any person who would have been a Class Member but elected to opt out of class treatment.")).  The order did not clearly preclude individual arbitrations or limit individual arbitrations to those who had timely filed individual proofs of claim.  As late as October 2018, Nabors appeared to agree that the order lifting the stay allowed individual arbitrations.  Nabors requested that "Ridgeway, Smith, and the Individual Claimants" who filed proofs of claim be allowed to "proceed to arbitration, and judgment on, or settlement of, the Pre-Petition Litigation."  (ROA 7465).

The delay was prolonged by the continued negotiations attempting a global settlement, efforts that continued well beyond the bar date.  *See In re Eagle Bus Mfg., Inc.*, 62 F.3d at 738 ("If [the debtor] had in fact believed that these claims were barred it would not have allowed the Claimants to participate in the ADR and would not have negotiated with them for several months

after passage of the bar date."). Before the bar date, counsel for the debtors informed counsel for the creditor-appellants that Nabors would likely indemnify C&J Well Services for the California wage-litigation claims, and that the indemnification would be a ground for relief from the automatic bankruptcy stay. (ROA 8262). Beyond the bar date, the parties continued to negotiate an agreed motion for relief from the bankruptcy stay, (ROA 8263, 8342), which the bankruptcy court granted, (ROA 4459–64).

After the Ninth Circuit's ruling precluding class treatment, Nabors continued to negotiate with the creditor-appellants. From May 2018 through February 2019, Nabors agreed to a "global mediation" of the wage-litigation claims, including the claims of those who had not filed individual proofs of claim before the bar date. (ROA 8231). Nabors participated in informal discovery and claims analysis, proposed and rejected mediators, participated in mediation, and continued negotiating after mediation failed. (ROA 8271–78); *see In re Northstar Offshore Grp., LLC*, 2018 WL 4443201, at *3 ("[I]t would be inequitable to find prejudice to [the debtor] while it simultaneously negotiated in good faith with [the claimant] past the claims bar date and anticipated that the failure to reach a compromise would lead to a dispute between the parties."); *In re Smith*, 200 B.R. at 137 ("The ongoing discovery and correspondence between counsel also indicates a full awareness that the claims were being pursued.").

Nabors argues that the creditor-appellants are the victims of their own "legally risky" class-wide-proof-of-claim strategy. (Docket Entry No. 10 at 14). While some courts have held that a class proof of claim is not allowed under Federal Rules of Bankruptcy Procedure 3001(b) and 7023, *see, e.g.*, *In re FIRSTPLUS Fin., Inc.*, 248 B.R. 60, 69 (Bankr. N.D. Tex. 2000), those courts are "in the minority with this view," *In re Vanguard Nat. Res., LLC*, No. 17-30560, 2017 WL 5573967, at *4 (Bankr. S.D. Tex. Nov. 20, 2017) (citation omitted). The majority of federal courts

hold that "a class proof of claim is permissible under the Bankruptcy Code and Federal Rules of Bankruptcy Procedure," and that "Bankruptcy Rule 9014 allows bankruptcy courts to apply Bankruptcy Rule 7023 and Rule 23 to any stage of a contested matter, including the filing of a proof of claim." *Id.*; *see also In re Am. Reserve Corp.*, 840 F.2d 487, 488 (7th Cir. 1988); *Reid v. White Motor Corp.*, 886 F.2d 1462, 1470 (6th Cir. 1989); *In re Trebol Motors Distrib. Corp.*, 220 B.R. 500, 502 (B.A.P. 1st Cir. 1998); *Gentry v. Siegel*, 668 F.3d 83, 88–89 (4th Cir. 2012).  The Fifth Circuit has not addressed this question, but it has held that bankruptcy courts have discretion as to whether to apply Rule 23 to contested matters.  *See In re TWL Corp.*, 712 F.3d 886, 892 (5th Cir. 2013); *see also In re Think Fin., LLC*, No. 17-33964, 2018 WL 9801454, at *6 (Bankr. N.D. Tex. Aug. 30, 2018) (allowing a class proof of claim and applying Rule 23).

The record and applicable law suggest that, if the creditor-appellants' use of class-wide proofs of claim and delay in filing individual proofs of claim was neglect, it was excusable.  First, the majority of federal courts have allowed class-wide proofs of claim.  Second, Rule 3001(b) allows a creditor or its authorized agent to file a proof of claim.  A minority of courts view hold that a self-appointed class representative does not qualify as an "authorized agent" under Rule 3001(b).  *See, e.g.*, *In re FIRSTPLUS Fin., Inc.*, 248 B.R. at 67 ("A putative class representative is not, nor can he be transformed by the court into, an authorized agent within the purview of Bankruptcy Rule 3001(b).").  Ridgeway and Smith's counsel represent each putative class member, removing the authorized-agent concerns highlighted by these courts.

Third, before the bar date, Nabors and the debtors informed the creditor-appellants that they would likely not be subject to the bankruptcy stay because Nabors had indemnified the debtors for the California wage-litigation claims.  (ROA 8262).

Fourth, the underlying California litigation was styled as a class action. While the California district court had not certified a class, it had denied the C&J Well Services motion to compel arbitration, eliminating the primary barrier to class certification. As noted above, the bankruptcy court and the parties appeared to assume that the California wage litigation would proceed in class form when the class-wide proofs of claim were filed.

## IV.   Conclusion

The bankruptcy court's order denying the creditor-appellants' motion to file late proofs of claim is reversed. This case is remanded to the bankruptcy court for proceedings consistent with this ruling.

SIGNED on June 29, 2021, at Houston, Texas.

_____

Lee H. Rosenthal
Chief United States District Judge